**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

DAVID C. REED and CATHERINE M.
REED,

      **Debtors.**

**Filed / Docketed
April 2, 2009**

Case No.  08-13036-M
Chapter 7

## MEMORANDUM OPINION

Most balloons, with their vibrant colors and creative designs, are pretty.  Most balloon payments, which require borrowers to come up with a large sum of money in a short period of time, are not.  In what is becoming a trend in this Court, this case involves a reaffirmation agreement containing a significant balloon payment.  The Court is asked to approve the agreement on the basis that the lender will, when the time comes, refinance the final balloon payment.  The lender's promise satisfied debtors and their counsel.  The question is whether it satisfies the requirements of the United States Bankruptcy Code or this judge.  The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

### Findings of Fact

David C. Reed and Catherine M. Reed ("Debtors") filed an original Chapter 7 petition with this Court on December 19, 2008.  The Cleveland Bank ("Bank") is the holder of two separate claims against the Debtors.  One of the claims is secured by a lien upon the Debtors' motor vehicle

(the "Automobile Claim"), while the other claim is secured by a lien upon commercial real estate located in Nowata, Oklahoma (the "Real Estate Claim").   The two claims are not cross-collateralized.

On January 26, 2009, Debtors filed an agreement reaffirming both claims (the "Reaffirmation").[1]  Under its terms, Debtors seek to reaffirm both the Automobile Claim and the Real Estate Claim.  The Automobile Claim has a principal balance of $8,012.72, and accrues interest at the rate of 9.50 per cent per annum.  It is to be repaid in equal monthly installments of $200, with a final installment of $146.76 due on January 13, 2013.  The Real Estate Claim has a principal balance of  $37,466.42, and accrues interest at the rate of 8.00 per cent per annum.  The Bank also claims to be owed attorneys' fees of $1,000 with respect to the Real Estate Claim.  The repayment schedule provided for the Real Estate Claim in the Reaffirmation requires Debtors to make  monthly payments of $285 on the 5th of each month, with a balloon payment of $37,236.13, plus additional interest and attorneys' fees, due on July 5, 2010.[2]

In Part D of the Reaffirmation, Debtors state that they have current monthly income of $8,380.91, and current monthly expenses (not including the $200 per month payment with respect to the Automobile Claim) of $8,104.99, leaving $275.92 each month for payment under the terms of the Reaffirmation.  Debtors claim that a third party will make the payment on the Real Estate Claim, and that the balance of $275.92 is more than sufficient to make the payment due with respect to the Automobile Claim.  There is no explanation as to how Debtors will be able to fund the balloon

---

[1]  *Docket No. 21.*

[2]  In fact, the promissory note executed with respect to the Real Estate Claim is a demand note.  Bank has the right to demand payment in full of this obligation at any time.

payment on the Real Estate Claim when due.

A hearing on the Reaffirmation was held on March 3, 2009.  At the hearing, counsel for the Bank admitted that the Automobile Claim and the Real Estate Claim were not cross-collateralized. With respect to the Real Estate Claim, the third party who will supposedly make the monthly payments on that claim did not appear, nor was there any testimony as to the third party's ability to make either the monthly payments or the balloon payment.  Counsel for the Bank indicated that the Bank would expect the Debtors to either repay the entire amount of the balloon payment when due, or that the Bank and the Debtors would renegotiate new terms with respect to the balloon payment at the time the same fell due.  No evidence was offered on this issue.

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

### Conclusions of Law

In the eyes of most Chapter 7 debtors, and in the eyes of this judge, one of the most important tasks undertaken by our bankruptcy courts is the entry of an order of discharge.  A discharge order prohibits any attempts to collect as personal liabilities any debts of the debtor that arose prior to the filing of the case.[3]  It is no wonder the bankruptcy discharge is commonly referred to as a debtor's "fresh start."[4]

Reaffirmation agreements run contrary to the concept of the "fresh start."  Debt that would otherwise be trapped within the snare of the bankruptcy discharge, if reaffirmed, remains the

---

[3]  *See* § 524(a).

[4]  *See, e.g.,  Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir. 1993);  Thomas H. Jackson, *The Fresh-start Policy in Bankruptcy Law*, 98 Harv. L. Rev. 1393, 1393 (1985).

debtor's personal liability and burden.  Consider the following statement of the United States Court of Appeals for the First Circuit:

> Although reaffirmation is consensual in nature, the myriad safeguards erected by Congress reflect its recognition that a debtor's decision to enter into a reaffirmation agreement is likely to be fraught with consequence.  In point of fact, reaffirmation represents the only vehicle through which an otherwise dischargeable debt can survive the successful completion of Chapter 7 proceedings.  Moreover, once a debt is reaffirmed, the creditor can proceed to enforce its rights as if bankruptcy had not intervened.  Because reaffirmation constitutes a debtor-invoked exception to the tenet that underpins the bankruptcy system-the "fresh start" principle-a reaffirming debtor must be afforded some protection against his own (potentially) short-sighted decisions.[5]

Many such protections are found in the Bankruptcy Code.  Reaffirmation agreements must be in writing and entered into prior to the granting of the discharge.[6]  The debtor must be advised that reaffirmation agreements are purely voluntary.[7]  He or she must be advised of the consequences and effect of a reaffirmation agreement, either by counsel or the Court.[8]  A debtor also has an absolute right to rescind a reaffirmation agreement within certain time frames.[9]  In addition, in order for a reaffirmation agreement to be binding, one of two additional events must take place: if a debtor is represented by counsel, his or her counsel must file a declaration or affidavit stating that the reaffirmation agreement was voluntarily and knowledgeably entered into by the debtor, that counsel explained the effects and consequences of the reaffirmation, and that, in the attorney's opinion, reaffirmation of the debt at issue does not impose an undue hardship upon the debtor or any of his

---

[5] *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002).

[6] § 524(c)(1).

[7] § 524(c)(2).

[8] § 524(c)(3) and (d).

[9] § 524(c)(4).

or her dependents.[10]  If a debtor is not represented by counsel, then the Court must hold a hearing at which the debtor must appear.  At that hearing, the Court must explain to the debtor the legal effect of the reaffirmation agreement, and find that reaffirmation of the debt at issue does not impose an undue hardship upon the debtor or any of the debtor's dependents.[11]  These requirements represent an attempt to insure that a debtor does not improvidently enter into reaffirmation agreements, and that the vitality of a debtor's "fresh start" is preserved.

In 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added § 524(m) to the Bankruptcy Code.  The section provides that:

> Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), *it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt*. This presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.[12]

The section applies to every reaffirmation agreement except where the creditor is a credit union.[13] When a presumption of undue hardship exists, this Court is required to review the reaffirmation agreement, and has the authority to disapprove the agreement if the presumption of undue hardship

---

[10] § 524(c)(3); *see also In re Minardi*, 399 B.R. 841 (Bankr. N.D. Okla. 2009).

[11] § 524(d).

[12] § 524(m)(1) (emphasis added).

[13] § 524(m)(2).

is not rebutted to the Court's satisfaction.

In the present case, Debtors have the funds to make the monthly payments of $200 under the terms of the Automobile Claim.  They do not have the funds to make either the monthly payment of $285 or the balloon payment of $37,236.13 plus interest and fees called for under the Real Estate Claim.  The only "sources" of funds to make these payments are the unsubstantiated ability of a third party to make the monthly payments, and the anticipated refinancing of the real estate debt by the Bank.  Unfortunately for the Debtors, if the Reaffirmation is approved in its present form, the Bank is under no legal obligation to refinance the Real Estate Claim.  This Court holds that an unenforceable promise to refinance a debt is not an "additional source of funds" for purposes of § 524(m).[14]  The Court finds that reaffirmation of the Real Estate Claim would impose an undue hardship upon the Debtors, and should not be approved.

Nothing in the Reaffirmation indicates that approval of the reaffirmation of the Automobile Claim is contingent upon approval of reaffirmation of the Real Estate Claim.  The claims are not cross-collateralized.  The Bank presented no evidence or argument to the effect that it would not allow the Debtors to reaffirm the Automobile Claim absent reaffirmation of the Real Estate Claim.  Reaffirmation of the Automobile Claim, standing alone, does not impose an undue hardship upon the Debtors.  There is no basis upon which the Court may or should disapprove the Reaffirmation to the extent it deals with the Automobile Claim.

---

[14]  In order to satisfy the requirements of the statute, either the Debtors must identify a source of funds from which they can satisfy the Real Estate Claim under its express terms, or the Debtor and the Bank must submit a reaffirmation agreement that reamortizes the balloon payment in a fashion that is affordable for the Debtors.  In addition, in order to defeat the presumption of undue hardship in this case, Debtors must present evidence regarding the intent and ability of the unidentified third party to make the monthly payments due under the terms of the Real Estate Claim.

## Conclusion

The Reaffirmation Agreement is approved in part.  Reaffirmation of the Automobile Claim is approved.  Reaffirmation of the Real Estate Claim is not approved.  A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 2nd day of April, 2009.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5512.3